UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SIYU YANG, YING ZHU, and LU YANG,

              Plaintiffs,

      v.

MATTHEW ARDIZZONE, JAMAL J.
ROSSI, MERCEDES RAMIREZ
FERNANDEZ, and SARAH C.
MANGELSDORF,

              Defendants.

_____

SIYU YANG and LU YANG,

              Plaintiffs,

      v.

EASTMAN SCHOOL OF MUSIC,
UNIVERSITY OF ROCHESTER,
MATTHEW ARDIZZONE, JAMAL J.
ROSSI, MERCEDES RAMIREZ
FERNANDEZ, and SARAH C.
MANGELSDORF,

              Defendants.

_____

**DECISION AND ORDER**

6:20-CV-06691 EAW

6:21-CV-06168 EAW

## INTRODUCTION

The instant actions arise out of the rescission of plaintiff Siyu Yang's ("S. Yang")

offer of admission to the Eastman School of Music ("Eastman") at the University of

Rochester (the "University"). (*See Yang v. Ardizzone*, Civil Action No. 20-cv-06691

("Yang I Action"), Dkt. 1; *Yang v. Ardizzone*, Civil Action No. 21-cv-06168 ("Yang II

- 1 -

Action"), Dkt. 1).  Motions for dismissal are pending in both the Yang I Action and the Yang II Action.  (Yang I Action, Dkt. 11; Yang II Action, Dkt. 3).  Also pending before the Court are a motion to withdraw filed by plaintiff Ying Zhu ("Zhu") in the Yang I Action (Yang I Action, Dkt. 5) and a motion to compel filed by S. Yang and plaintiff Lu Yang ("L. Yang")[1] in the Yang II Action (Yang II Action, Dkt. 7).

For the reasons set forth below, the Court finds that: (1) Zhu's motion to withdraw should be granted; (2) diversity jurisdiction does not exist in this case; (3) L. Yang  lacks standing to assert any of the federal claims set forth in either the Yang I Action or the Yang II Action; (4) S. Yang has failed to plead a viable federal claim; and (5) the Court should not exercise supplemental jurisdiction over Plaintiffs' state claims.  Accordingly, the Court grants Zhu's motion to withdraw and both pending motions to dismiss.  The Court denies the motion to compel as moot.

## BACKGROUND

In March of 2020, S. Yang accepted an offer of admission to Eastman.  (Yang I Action, Dkt. 1 at 41).  He paid a $500.00 enrollment deposit on March 31, 2020.  (*Id*. at 40).

On June 8, 2020, S. Yang made a post on Facebook entitled "THE SHOCK OF FREEDOM" in which he stated, among other things, that it is a "statistical fact" that "African Americans and Hispanics commit more crimes than whites and tend to be on the

---

[1]     S. Yang, L. Yang, and Zhu are referred to herein collectively as the "Yang I Plaintiffs" or simply "Plaintiffs."  S. Yang and L. Yang are referred to herein collectively as the "Yang II Plaintiffs."  L. Yang and Zhu are S. Yang's parents.  (*See* Yang I Action, Dkt. 1 at 9).

more 'over the top' [sic], such as taunting the police for no reason; talking back at police and refusing or delaying to comply with their commands" and that "African Americans are unfamiliar with the usage of their newly acquired freedom.  Blacks have the right to follow the commands of the officers and remain silent."  (*Id.* at 29-33).

On June 12, 2020, defendant Matthew Ardizzone ("Dean Ardizzone"), the Associate Dean of Admissions and Enrollment Management at Eastman, sent S. Yang an email indicating that Eastman had "been contacted by several individuals . . . concerning a post of [his] on Facebook."  (*Id.* at 21).  Dean Ardizzone advised S. Yang that his "characterizations of specific minority groups" were a "source of great concern to" Eastman, which "seek[s] to nurture an environment of mutual respect, free from racial bias and discrimination."  (*Id.*).  Dean Ardizzone further advised S. Yang that he was "consulting with offices across the University of Rochester campus to discuss and determine . . . next steps" and asked S. Yang to submit a "written response and reflection focusing on the instances of racial bias in [his] post."  (*Id.*).

S. Yang submitted a written response as requested by Dean Ardizzone.  (*Id.* at 22). On June 15, 2020, Dean Ardizzone sent S. Yang an email indicating that his written response had not "specifically addressed [his] statements that exhibit racial bias," and affording him an opportunity to file an additional response.  (*Id.*).

By letter dated July 6, 2020, Dean Ardizzone advised S. Yang that his admission to Eastman had been rescinded and that his $500.00 enrollment deposit would be refunded. (*Id.* at 16).

On July 24, 2020, Jamal J. Rossi ("Dean Rossi"), the Dean of Eastman, and Mercedes Ramirez Fernandez ("VP Ramirez Fernandez"), the University's Vice President for Equity and Inclusion and Chief Diversity Officer, sent a letter to Plaintiffs upholding the decision to rescind S. Yang's admission.  (*Id*. at 17-18).  Dean Rossi and VP Ramirez Fernandez described a phone call they had with Plaintiffs in which they had discussed their family's experiences in emigrating from China to the United States and with the Chinese government, which they described as "compelling," but stated that S. Yang had never acknowledged that his Facebook post "contained comments of racial bias that were divisive and hurtful, whether intentionally or unintentionally."  (*Id*.).

L. Yang sent a "Letter of Appeal" on behalf of his son to Sarah Mangelsdorf ("President Mangelsdorf"), the President of the University.  (*Id*. at 19).  On July 31, 2020, President Mangelsdorf sent S. Yang a letter that again upheld the decision to rescind his admission, indicating that "[n]othing communicated by [S.Yang] or on [his] behalf to date expresses any recognition that publishing biased statements of this nature contradicts the University's deeply held values to a degree that is likely to significantly disrupt the University's educational environment."  (*Id*. at 20).

The Yang I Plaintiffs commenced the Yang I Action in the United States District Court for the Eastern District of New York on August 24, 2020.  (Yang I Action, Dkt. 1).  Dean Ardizzone, Dean Rossi, VP Ramirez Fernandez, and President Mangelsdorf (collectively the "Yang I Defendants") are named as defendants in the Yang I Action.  (*Id*. at 1).

- 4 -

The Yang I Action was transferred to this District on September 11, 2020.  (Yang I Action, Dkt. 4).  On September 25, 2020, Zhu filed a motion to withdraw as a plaintiff.  (Yang I Action, Dkt. 5).   The Yang I Plaintiffs filed an amended complaint on September 25, 2020, and a second amended complaint on October 21, 2020.  (Yang I Action, Dkt. 6; Yang I Action, Dkt. 8).

The Yang I Defendants filed a motion to dismiss the second amended complaint in the Yang I Action on November 13, 2020.  (Yang I Action, Dkt. 11).  The Yang I Plaintiffs filed a response on December 4, 2020, and the Yang I Defendants filed their reply on December 21, 2020.  (Yang I Action, Dkt. 15; Yang I Action, Dkt. 16).

Then, on February 18, 2021, the Yang II Plaintiffs commenced the Yang II Action.  (Yang II Action, Dkt. 1).  In addition to the Yang I Defendants, Eastman and the University are named as defendants in the Yang II Action[2].  (*Id*.).

The Yang II Defendants moved to dismiss the complaint in the Yang II Action on March 30, 2021.  (Yang II Action, Dkt. 3).  The Yang II Plaintiffs responded on April 21, 2021.  (Yang II Action, Dkt. 6).  The Yang II Plaintiffs filed a motion to compel on April 30, 2021.  (Yang II Action, Dkt. 7).  The Yang II Defendants filed a reply in further support of their motion to dismiss on May 5, 2021.  (Yang II Action, Dkt. 9).  On May 17, 2021, without seeking leave of the Court, the Yang II Plaintiffs filed a sur-reply.  (Yang II Action, Dkt. 10).  Although it was not proper for the Yang II Plaintiffs to file a sur-reply without

---

[2]     The Yang I Defendants, Eastman, and the University are collectively referred to herein as either the "Yang II Defendants" or simply "Defendants."

leave of the Court, in light of their *pro se* status, the Court has nonetheless considered the arguments set forth therein in resolving the pending motions to dismiss.

## DISCUSSION

### I.   Claims Asserted in Operative Pleadings

Before proceeding to the merits of Defendants' motions to dismiss, the Court sets forth the claims asserted in each of the instant actions.  As an initial matter, the Court notes that the Yang I Plaintiffs, without seeking leave of Court, filed two amended complaints in the Yang I Action.  (Yang I Action, Dkt. 6; Yang I Action, Dkt. 8).   Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading once as a matter of course within 21 days after serving it or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  *See* Fed. R. Civ. P. 15(a)(1)(A), (B).  All other amendments require either the "opposing party's written consent" or leave of the Court.  Fed. R. Civ. P. 15(a)(2).

"Rule 15 provides that amendment as a matter of course can happen only once." *Paladino v. Seals-Nevergold*, No. 17-CV-538, 2019 WL 1283830, at *2 (D. Vt. Mar. 20, 2019) (quotation omitted); *see also Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015) ("Federal Rule of Civil Procedure 15(a)(2) states that a party may amend its pleadings more than once 'only with the opposing party's written consent or the court's leave.'").  Here, the Yang I Plaintiffs have attempted to amend as of right twice, and the filing of the second amended complaint was therefore procedurally improper.

However, the Yang I Defendants have not raised a Rule 15 objection to the filing of the second amended complaint, and their motion to dismiss is addressed to the second amended complaint.  In light of this fact, and the Yang I Plaintiffs' *pro se* status, the Court will treat the second amended complaint as the operative pleading in the Yang I Action.

The Yang I Action second amended complaint sets forth the following claims: (1) the rescission of S. Yang's admission to Eastman was "procedural[ly] unjust"; and (2) the rescission of S. Yang's admission to Eastman was "substantive[ly] absurd[]."  (Yang I Action, Dkt. 8 at 9-22).  In support of these claims, the Yang I Plaintiffs cite the Fourteenth Amendment to the United States Constitution, various provisions of the New York State Constitution, the Universal Declaration of Human Rights, and the International Convention on the Elimination of All Forms of Racial Discrimination. (*Id*.).

The complaint in the Yang II Action asserts the same two claims.  (Yang II Action, Dkt. 1 at 11-28).  However, in addition to the authorities above, the Yang II Plaintiffs also cite the First Amendment to the United States Constitution and Title VI of the Civil Rights Act of 1964,  42 U.S.C. §§ 2000d *et seq.* ("Title VI") as the legal bases for their claims. (*Id*. at 21).

## II.    <u>The Court does not Have Diversity Jurisdiction</u>

It is not entirely clear to the Court whether Plaintiffs are attempting to assert that diversity jurisdiction exists in this case.  When filing their original complaint, they checked boxes indicating that the "basis for federal court jurisdiction" was both "federal question" and "diversity of citizenship."  (Yang I Action, Dkt. 1 at 4).  However, in the second amended complaint in the Yang I Action and in the complaint in the Yang II Action, only

"federal question" is checked. (Yang I Action, Dkt. 8 at 3; Yang II Action, Dkt. 1 at 4). Nonetheless, in light of Plaintiffs' *pro se* status, the Court has considered whether diversity of citizenship exists and concludes, for the reasons described below, that it does not.

"The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between . . . citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (quoting 28 U.S.C. § 1332(a)(1)). "When a person is a dual citizen, it is the American citizenship that governs the issue of diversity jurisdiction." *Spiteri v. Russo*, No. 12-CV-2780 MKB RLM, 2013 WL 4806960, at *61 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015); *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) ("In matters of diversity jurisdiction American citizenship will determine diversity." ). For purposes of diversity, an American citizen is a citizen of the state in which he or she is domiciled. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).

In support of their request for dismissal, the Yang I Defendants have presented evidence to the Court that: (1) S. Yang is a citizen of both the United States and the Peoples Republic of China and is domiciled in New York state; and (2) the Yang I Defendants are all citizens of New York state. (Yang I Action, Dkt. 11-1; Yang I Action, Dkt. 11-4; Yang I Action, Dkt. 11-5; Yang I Action, Dkt. 11-7; Yang I Action, Dkt. 11-8); *see Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (the Court may "refer to evidence outside the pleadings" in determining whether subject matter jurisdiction exists). Plaintiffs have not disputed these facts or presented any evidence to the contrary. Accordingly, complete

diversity is not present in either of these actions, and the Court does not have diversity jurisdiction over any of the claims asserted.  *See Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 217 (E.D.N.Y. 2011) ("[D]iversity jurisdiction may be properly invoked only when a dual citizen's domicile, and thus his citizenship, is in a state diverse from that of adverse parties.").

## III.   No Viable Federal Claims are Alleged in Either Action

Defendants argue that there are no viable federal claims asserted in either the Yang I Action or the Yang II Action and that the Court accordingly should dismiss the federal claims and decline to exercise subject matter jurisdiction over the remaining causes of action.[3]  For the reasons discussed below, the Court agrees.

Before proceeding to the merits of the asserted federal claims, the Court grants Zhu's request to withdraw as a plaintiff.  (Yang I Action, Dkt. 5).  Defendants have not objected to this request by Zhu, it was made in the early stages of the litigation, and granting it will not cause prejudice to any party.  Accordingly, the Court terminates Zhu as a plaintiff, and need not consider the merits of any claims asserted on her behalf.

### A.   There is no Private Cause of Action for Violations of the Universal Declaration of Human Rights or the International Convention on the Elimination of All Forms of Racial Discrimination

As set forth above, Plaintiffs have invoked international law in support of their claims—namely, the Universal Declaration of Human Rights and the International

---

[3]   The Yang I Defendants also seek dismissal under Federal Rule of Civil Procedure 12(b)(5) on the basis that they were not properly served.  (Yang I Action, Dkt. 11-12 at 13-15).  Because the Court finds that dismissal is warranted on the alternative grounds discussed herein, it need not and does not reach this issue.

Convention on the Elimination of All Forms of Racial Discrimination. However, "the Universal Declaration of Human Rights—a non-binding United Nations resolution— creates no legal obligations or private civil cause of action." *Lizalde v. Goldberg*, 790 F. App'x 217 (D.C. Cir. 2019); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) (the Universal Declaration of Human Rights "does not of its own force impose obligations as a matter of international law"). Similarly, "there is no private cause of action under . . . the International Convention on the Elimination of All Forms of Racial Discrimination." *Funayama v. City of Philadelphia*, No. 13-CV-2667, 2013 WL 6159279, at *3 (E.D. Pa. Nov. 25, 2013); *see also Hunter v. PepsiCo Inc*., No. 14 C 06011, 2015 WL 720734, at *3 (N.D. Ill. Feb. 18, 2015) ("Plaintiffs raise some causes of action, like the claims under the International Convention on the Elimination of all Forms of Racial Discrimination, that are not actionable[.]"), *aff'd,* 631 F. App'x 445 (7th Cir. 2015). Plaintiffs simply cannot assert a viable federal claim pursuant to either of these authorities.

### B.    L. Yang Lacks Standing to Assert His Federal Claims

The Court turns first to the argument, made in both the Yang I Action and the Yang II Action, that L. Yang lacks standing to assert the claims made in these cases. (*See* Yang I Action, Dkt. 11-12 at 12 n.7; Yang II Action, Dkt. 3-2 at 20)[4].

"[A]ny person invoking the power of a federal court must demonstrate standing to do so"—that is, he or she "must seek a remedy for a personal and tangible harm."

---

[4]     The Court's standing analysis would apply with equal force to Zhu's federal claims, had they not been withdrawn.

*Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).  As the Court of Appeals for the Second

Circuit has explained:

> To satisfy the requirements of Article III standing, plaintiffs must demonstrate "(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief."

*Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019) (quoting *Selevan v. New York*

*Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)).

Here, the gravamen of Plaintiffs' federal claims is that Defendants have violated S.

Yang's constitutional rights to freedom of speech, due process, and equal protection under

the law.  However, parents lack standing to bring their own claims for the deprivation of

their children's constitutional rights.  *See, e.g., Horton v. Bd. of Educ. of the Sherburne-*

*Earlville Cent. Sch. Dist.*, No. 5:15-CV-00782, 2016 WL 2354266, at *2 (N.D.N.Y. May

4, 2016); *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001).  This is

true even where a parent alleges that the violation of his or her child's rights has caused

the parent emotional distress, because "emotional distress does not constitute a violation

of a federally protected constitutional right[.]"  *Morgan*, 166 F. Supp. 2d at 819.  Put more

simply, S. Yang's constitutional rights are individual to him, and a violation thereof does

not constitute an injury-in-fact to his parents, even if they find it upsetting.  Accordingly,

L. Yang lacks standing to bring the federal claims asserted in the second amended

complaint in the Yang I Action and the complaint in the Yang II Action.

- 11 -

C.      S. Yang's Federal Claims are not Plausibly Alleged

S. Yang has attempted to assert two kinds of federal claims: (1) claims for violations of his federal constitutional rights; and (2) a claim for violation of his rights under Title VI. He cannot successfully maintain any of these claims.

As to S. Yang's claims of federal constitutional violations, "[u]nder 42 U.S.C. § 1983, constitutional torts are only actionable against state actors or private parties acting under the color of state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quotation omitted). A viable § 1983 claim against a private actor "must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Id.* (quotation omitted).

Defendants in this case are a private university, its music school, and various officials thereof. Accordingly, a claim that they violated S. Yang's federal constitutional rights can proceed only if they were acting in concert with a state actor. The only apparent basis for such a claim by S. Yang in any of the four pleadings he has filed is his assertion that the University receives federal and state funding. (*See* Yang II Action, Dkt. 1 at 18 ("Despite that the 'UR' is a private institution, it still receives financial support from the federal government and the state.")). However, "[a] private entity does not become a state actor for purposes of § 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quotation omitted).

Further, while Plaintiffs assert that the University's decision to rescind S. Yang's offer of admission was in some way influenced by "Chinese communists" (*see* Yang II

- 12 -

Action, Dkt. 1 at 19-20), "acts by a foreign government and its officials cannot constitute conduct under color of state law under Section 1983." *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 956 (N.D. Cal. 2020) (quotation omitted), *aff'd*, No. 20-16073, 2021 WL 1423118 (9th Cir. Apr. 15, 2021); *see also Kavanagh v. KLM Royal Dutch Airlines*, 566 F. Supp. 242, 246 (N.D. Ill. 1983) ("In the context of Section 1983, . . . the term 'state' is not intended to include foreign governments; it clearly is a reference to a state of the United States."). Because there has been no action taken under color of state law, there is simply no viable basis for S. Yang to assert a § 1983 claim against Defendants.

Turning to S. Yang's Title VI claim, "Title VI prohibits intentional discrimination based on race in any program that receives federal funding." *DT v. Somers Cent. Sch. Dist.*, 348 F. App'x 697, 699 (2d Cir. 2009). The Court notes as an initial matter that "Title VI does not provide for individual liability." *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018). Accordingly, no Title VI claim can survive as to the Yang I Defendants, all of whom are individual employees of the University or Eastman.

S. Yang also cannot assert a plausible Title VI claim against the University or Eastman. "The two elements for establishing a cause of action pursuant to Title VI are (1) that the entity involved is engaging in racial or national origin discrimination and (2) the entity involved is receiving federal financial aid." *Scelsa v. City Univ. of New York*, 806 F. Supp. 1126, 1140 (S.D.N.Y. 1992). Here, Plaintiff has pleaded no facts that would support an inference that he was discriminated against due to his race or national origin. On the contrary, he claims to have been falsely branded a racist by Defendants. (Yang II

Action, Dkt. 1 at 25-26).  S. Yang's factual claims simply do not fall with the purview of Title VI.

Nor can S. Yang's claim that "Chinese communists" have "infiltrated" the University in order to "brainwash malleable officials" (*Id*. at 17) save his Title VI claim. Essentially, S. Yang claims that the decision to withdraw his admission was the result of political pressure by the Chinese government, as a result of his family's anti-communist political opinions.  However, "[b]eing treated differently as a result of one's political beliefs is not the equivalent of discrimination that arises from an individual's particular race, as is required to establish a violation of Title VI."  *D.S. by & through C.S. v. Rochester City Sch. Dist*., No. 6:19-CV-6528 EAW, 2020 WL 7028523, at *10 (W.D.N.Y. Nov. 30, 2020) (dismissing Title VI claim where the plaintiffs claimed to have been harassed based on their "beliefs about race and their preferred presidential candidate").

For all these reasons, the Court finds that neither the second amended complaint in the Yang I Action nor the complaint in the Yang II action sets forth a viable federal cause of action.  The Court further finds that even in light of the special solicitude afforded to *pro se* litigants, it would not be appropriate to afford Plaintiffs the opportunity to attempt further amendments.  Plaintiffs have already submitted four separate pleadings, and the complaint in the Yang II Action was drafted with the benefit of the information provided in the motion to dismiss in the Yang I Action.  Additional pleading cannot cure the substantive problems with Plaintiffs' federal claims.

IV.     **The Court Declines to Exercise Supplemental Jurisdiction over the State Law Claims**

Having concluded Plaintiffs' federal claims are not viable, the Court considers whether it should exercise supplemental jurisdiction over Plaintiffs' state law claims and concludes that it should not.

Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court's exercise of this discretion is governed by 28 U.S.C. § 1367:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Under § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1)     the claim raises a novel or complex issue of State law,
>
> (2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)     the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c). "[T]he discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors . . . ." *Purgess v. Sharrock*,

33 F.3d 134, 138 (2d Cir. 1994).  After dismissing all federal claims, the district court must "reassess its jurisdiction over the case by considering . . . judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004). "[D]ismissal of pendent state law claims under such circumstances is generally appropriate, as [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Ross v. Woods*, 412 F. App'x 392, 393 (2d Cir. 2011) (quotation omitted and second alteration in original).

In this case, the Court has dismissed all federal claims, and diversity jurisdiction does not exist.  Upon consideration of all relevant factors, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Purgess*, 33 F.3d at 138 (quotation omitted); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where "federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims").  The dismissal of Plaintiffs' state law claims is without prejudice.  *See JetBlue Airways Corp. v. CopyTele Inc*., 629 F. App'x 44, 45 (2d Cir. 2015) (dismissal for lack of subject matter jurisdiction must be without prejudice).

## <u>CONCLUSION</u>

For the foregoing reasons, Zhu's motion to withdraw (Yang I Action, Dkt. 5) and the pending motions to dismiss (Yang I Action, Dkt. 11; Yang II Action, Dkt. 3) are granted.  Plaintiffs' claims pursuant to the Universal Declaration of Human Rights and the International Convention on the Elimination of All Forms of Racial Discrimination and S. Yang's claims pursuant to 42 U.S.C. § 1983 and Title VI are dismissed with prejudice; all other claims are dismissed without prejudice.  The Yang II Plaintiffs' motion to compel (Yang II Action, Dkt. 7) is denied as moot.  The Clerk of Court is directed to close both the Yang I Action, Civil Action No. 20-cv-06691, and the Yang II Action, Civil Action No. 21-cv-06168.

SO ORDERED.


ELIZABETH A. WOLFORD
United States District Judge


Dated:  May 19, 2021
        Rochester, New York

- 17 -